UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

    -versus-                                Docket number 04-cr-966 (FB)

NICOLE BROWN,

        DEFENDANT.
---------------------------------X


OBJECTIONS TO THE FINDINGS OF UNITED STATES MAGISTRATE POHORELSKY AND TO HIS RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS ALLEGEDLY MADE TO POLICE ON NOVEMBER 10, 2006


JaneAnne Murray, Esq.
Law Offices of JaneAnne Murray
Attorney for Nicole Brown
233 Broadway, Suite 2208
New York, New York  10279

*Order*

*The Report + Recommendation of the U.S. Magistrate Judge to [which] the case has been referred is [adopted]* [handwritten annotation, partially illegible]

*[signature]*
*3/31/06*

On February 9, 2006, the Defendant received the transcript of the Report of United States Magistrate Judge Pohorelsky recommending that the Defendant's Motion to Suppress statements alleged to have been made on November 10, 2006, be denied. The Court's decision was read into the record after oral argument was heard on the Defendant's motion on February 7, 2005. Pursuant to 28 U.S.C. § 636(b)(1), the Defendant hereby timely files her written objections to the proposed findings and recommendations for reasons enumerated below.

### First Objection

#### The Recommendation that the Defendant's Suppression Motion be Denied is Based on an Overly-Narrow Application of the Supreme Court's "Deliberate-Elicitation" Standard

In *Maine v. Moulton*, 474 U.S. 159 (1985), the Supreme Court held that "knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Id.* at 176. A year later, in *Kuhlmann v. Wilson*, 477 U.S. 436 (1986) the Court, in discussing its prior holding in *United States v. Henry*, 447 U.S. 264 (1980), stated that "[a]lthough the informant had not questioned the defendant, the informant had 'stimulated' conversations with the defendant in order to 'elicit' incriminating information." *Id.* at 458 (quoting *Henry* at 273 and at 271, n. 9). More recently, in *Fellers v. United States*, 540 U.S. 519 (2004), the Court found that there was "no question that the officers in this case 'deliberately elicited' information from the [defendant]," where police told the defendant that their purpose in coming to his home was to discuss his involvement in the case and his association with the others named in the indictment. *Id.* at 524.

Thus, the Court of Appeals for the Third Circuit, recognized that the government cannot "undertake to secure incriminating information from a represented defendant in the absence of counsel and . . . thereafter use in court the incriminating information it obtains . . . if the police . . . question *or otherwise encourage or facilitate the defendant's discussion of the crime*, and this is true even if the defendant initiates the discussion of the criminal conduct." *Bey v. Morton*, 124 F.3d 524, 530 (3d Cir. 1997) (citing *Henry*, 447 U.S. at 271-72) (emphasis added).

By limiting its finding of "deliberated elicitation" to situations in which the government actor "manufactured circumstances that were intended to elicit incriminating statements," R. 41/8[1], or made a "deliberate effort to elicit incriminating statements," R. 45/4, the Report erroneously disregards that portion of the Court's holding in *Moulton* establishing that in eliciting a defendant's statement, the government's "knowing exploitation" of an opportunity to do so without counsel present is enough to run afoul of the protections contained in the Sixth Amendment.[2]

Instead, the Report relies on *United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003), which held that "[a] Sixth Amendment violation occurs, however, only if the government has taken an action 'that was designed deliberately to elicit incriminating remarks,'" *Id.* at 182 (quoting *United States v. Rosa*, 11 F.3d 315, 329 (2d Cir.1993)). *Edwards* was a case, however, where the defendant telephoned a DEA agent with whom he had gone to college, asked to meet him, visited his office and inquired about of becoming an informant. *Id.* at 175. The Report erroneously extrapolates an unduly narrow definition of the deliberate elicitation standard from this quotation, which *Rosa*

---

[1] Numbers following "R." refer to the page and line number(s) of the transcript of the February 7, 2006, oral argument and decision on Defendant's suppression motion.

[2] This portion of the of the *Moulton* Court's holding is quoted in the Report, R. 37/5-10, however, it is the Defendant's position that Report erroneously failed to afford it its proper weight in making its finding that the Defendant's statements were not deliberately elicited.

Page 3 of 6

quoted from *Kuhlmann v. Wilson*, and which reads in its entirety "the defendant must demonstrate that the police and their informant took *some action, beyond merely listening*, that was designed deliberately to elicit incriminating remarks" 477 U.S. at 459 (emphasis added).

The actions that the police took in this case—both prior to Det. Castiglia being called in to the proffer room and after, as discussed more fully below—went well beyond merely listening. Under the Supreme Court's jurisprudence, moreover, there is no requirement that officers think or hope that circumstances they create would "inevitably lead" to a defendant making incriminating statements. R. at 44/6-6.

Thus, the Report's findings are erroneously based on an overly-narrow application of the Supreme Court's "deliberate-elicitation" standard. The Defendant respectfully objects to the Court's recommendation.

### Second Objection

**Even Under a Narrow Interpretation of the Deliberation Standard, it was Error to Recommending that the Defendant's Suppression Motion be Denied**

Even under the narrow interpretation of the "deliberate elicitation" doctrine employed by the Court, based on the circumstances set forth in the Defendant's moving papers, the finding that the police did not deliberately elicit the statements—both before and after the Defendant called Detective Castiglia into the proffer room—was erroneous.

Those circumstances— namely that the Defendant was in custody; that she was brought first to the police precinct where she discussed cooperation with her co-defendant, the police and prosecutors; brought to a proffer room for the purpose of further interviewing;that Detective

Castiglia was aware of and took advantage of her fragile emotional state; that he acted as a "medium" between her and the state; and that, though both words and actions, he prompted her to make one incriminating statement after the next— should have lead the Court to conclude that those statements were deliberately elicited and to have recommended that the motion be granted.

Moreover, even assuming *arguendo* that the events that transpired *prior* to the Defendant calling Detective Castiglia into the room were not tantamount to "deliberate elicitation," or whether instead "the defendant initiate[d] the discussion of the criminal conduct,"*Bey v. Morton*, 124 F.3d at 530, there can be no doubt that, after the first few sentences spoken by the Defendant, the prompting phrases and gestures of Det. Castiglia did "otherwise encourage or facilitate the defendant's discussion of the crime." *Id. See also United States v. Foreman*, 993 F.Supp. 186 (S.D.N.Y. 1998) (allowing some initial statements from the defendant but suppressing the statements that followed because they came in response to statements by the officer that were held to be "the functional equivalent of interrogation"). Thus the Court erred in finding that Detective Castiglia's "conduct in nodding, saying go on or uh-huh"[3] was "not conduct that is necessarily deliberately intended to elicit information that a defendant did not willing wish to disclose," R. 41/2-4

### Third Objection

---

[3]The Report neglected to include that at the hearing Detective Castiglia also admitted to saying "continue."

### Because the Report Found That There was Not Deliberate Elicitation it Did Not Reach the Question of Waiver

Because the Court found that the statements made by the Defendant were not the product of deliberate elicitation, it did not reach the question of waiver. Even if the error was only as to its findings *vis a vis* Detective Castiglia's prompting words and actions, any waiver of the right to counsel would still be invalid, *Michigan v. Jackson*, 475 U.S. 625, 636 (1986), and the statements properly suppressed in the prosecution's case-in-chief. *Michigan v. Harvey*, 494 U.S. 344, 345-46 (1990). Moreover, as discussed more fully in her motion papers, because any waiver by the Defendant was not knowing and voluntary, the statements could not be used by the prosecution for any purpose. *United States v. Spencer*, 955 F.2d 814, 820 (2d Cir. 1992).

Respectfully submitted,

Dated: February 21, 2006
New York, New York

JaneAnne Murray, Esq.
Law Offices of JaneAnne Murray
Attorney for Nicole Brown
233 Broadway, Suite 2208
New York, New York 10279